IN tbis cause,upon the following question,whether payments by the plaintiffs testator, a citizen of this commonwealth, into the loan office, of paper money, in satisfaction of his debts to creditors, who were british subjects, discharged the debitor ; a statute,by the legislature of the commonwealth, having enacted that such payments should have that effect ? the court, on the 3 day of may, 1793, after premising (a) that a controversy between a british creditor or debitor, and his american debitor or creditor, discussed before a tribunal in the country of either party, should be decided by those principles, which ought to govern the decision, if the same controversy were discussed before a tribunal in the country wjiereboth parties were aliens, published an opinion in these terms :
*212 That, after, by the declaration of independence, the united states of America was dismembered from the british empire, the rights of war and peace between those two nations, which, by that event, became distinct politic bodies, were equaly vigorous with those rights between nations never dependent either on the other■
That a war, of itself, doth not extinguish the rights, and, consequently doth not discharge the obligations, which existed before the commencement of it, between members of the different belligerent societies, although, during the continuance of the war, forensian assertions of the one, that is, the rights, and exactions of performance of the other, that is, the obligations, are not permitted in that country where the clam-ants are aliens ;—
That the right to money due to an enemy cannot be confiscated ; (b) because only things whereof manual occupation may be, to which class a right, being incorporeal, cloth not belong, are confiscable ; insomuch that perdition of the hostile proprietors right is not effected by his captivity, or even slaughter, but, in the latter event, his representative succedes to it;—
That, by the act of general assembly, passed in the year one thousand seven hundred and seventy-seven, intituled an act for sequestering british property, and enabling those indebted to bri-tish subjects, to pay off such debts, and directing the proceeding in suits wherein such subjects jare parties, the legislature of this commonwealth hath admitted, that the law and usages of nations require that the debts of british subjects should not be *213 confiscated, before their sovereign should, by his example, have provoked and justified suc'h a retaliation, on the part of this commonwealth;—and thereby (c) the legislature recognized the obligation of that law and of those usages ;—that this recognition, to the efficacy whereof diplomatic ceremony or a pragmatic sanction was unnecessary, did sufficiently declare, and was equivalent to an explicit and solemn pact yielding, the consent of the legislature, an¿ the consent of the people of this common wealth too,if the legislature could bind them i n that instance, to observe the praecepts of that law,and conform to those usages; —a people who, before their separation from the british empire were, and ever since have been, in the habits of such observance and conformity ;—and a legislature who, by an act passed in 1179, constituting the court of admiralty, hath adopted into its statutory code the laws of nature and nations ;—
That the legislature could not retract their consent to observe the preacepts of the law, and conform to the usages of nations ; for the act, by which the consent was testified, although it be in form of a statute, the existence of which generally begins, continues, and ends, with the will of its creator, was indeed a convention in which the legislature was but one party ; and the king of great britain not having authorised the confiscation of debts, owing by his subjects to the citizens of this commonwealth, the legislature of the commonwealth could not confiscate debts owing to british subjects, without violating the public faith ; that money, in the hand of a debitor, due to an enemy, cannot be confiscated, upon the principle, that it is the creditors property, for such money reinaineth the property of the debitor, and doth not become tbe property of the creditor, before a payment of it to himself, or a payment to his representative acting by virtue of a prior authority, or a payment to an officious stranger ratified by posterior consent of the creditor ; and
That the acts of general assembly, on the subject of confiscation, may be so expounded, without contravening the principles of sound criticism, (d) as not to purport that effect, and that by such an exposition the dignity of the commonwealth, and honour of its legislature would be consulted.
That the right to money due, which is concomitant with the person of the creditor, cannot be extinguished by thelegislature of the debitors country, if, at the time of the legislative act, by which the extinguishment was intended to be wrought, the *214 creditor were not a citizen or a subject of that country, or, being a foreigner, were not a resident or had not a domicilium therein; (e) because such a creditor was not subject to the *215 authority of that legislature, and consequently not bound by its acts, if the parliament of Great-britain should, by an act, declare the rights of creditors, of any other, or all other countries, to money due from british subjects, to be extinguished, all courts, perhaps those of Westminster hall not excepted, would adjure such legislative omnipotence, arrogated by the parliament, but that parliament hath not less power than any other legislature :—
Here is excepted the case, in which, by legislative authority, remedies are provided for condemning the credits and effects of *216 an absentee to the payment of his own debts to his creditors ; which the laws of nature and nations permit for preventing a failure of justice.
That if the creditors right to money due from his debitor, of another country cannot be extinguished by a legislative act of that country, the debitors obligation to pay the money cannot be absolved by a legislative act of the same country ; because the legislature, which is at most only the representative of the debitor, and hath not more power than its constituent had, could not do that which the debitor could not have done ; but the debitor could not by any act of its own, other than the payment to the creditor, or to some other empowered by him to receive the money, dissolve the obligation to pay it; and although, during a war between the nations of creditor and debitor, the former cannot compel the later, by a judiciary sentence in his own country, to pay the money, such a sentence may be obtained during the war, in another country, if the debitor be found there ;—
That, for reason before explaned, the legislature of any nation bath not power to substitute a different thing for the money which their people had before obliged themselves to pay to the people of another nation : if the british parliament should enact, that the money due from british subjects might be discharged by delivering malt, to the creditors, such an act would here, and perhaps, every where else, be adjudged void, as to all creditors, who were not british creditors.
That the legislature, by their act, passed in January, 1788, having declared that the commonwealth shall, in no event or contingency, be liable to any person or persons whatsoever, for any sum, on account of payments made bg american debitors into the loan office, other than the value thereof when reduced by the scale of depretiat ion, that is, other than the true value of the paper money,when it was paid, could not believe, that to compel *217 british creditors to allow more value, if compellable to allow any value, for payments, without their authority, against their consent, and never accepted, than those would allow for them, who pretended to authorize the payments, receive the money, and applied it to their uses, would be thought just, by any men, except the debitors, thus enriched by discharging debts, incurred for things of real value, with paper money, of little or no value (f) for any other purpose ; and therefore tire general assembly may be presumed to have intended, by their several acts on this subject, and those acts compared together may be so interpreted, as to intitle the debitor to retribution from those by whom he was encouraged to deposit his money in their funds; which seemeth to be the least exceptionable mode of adjusting this matter ;—
That the provisional articles and definitive treaty of peace between the united states of America and the king of Great-britain, after the ratifications thereof, if they be valid, abrogated the acts of every state in the union, tending to obstruct the re--covery of british debts from the citizens of those States: and that the treaty admitted to have been once valid, hath been rendered invalid by the failure of the british king to perform the articles thereof (g) this court hath no more power (h) to declare *218 than it bath to declare the british king and the united states of America to be in a state of war ; and
Finaly that, if this court be restrained from making decrees, by which british creditors in the time of peace may recover money due to them from the people of this commonwealth, the judge of this court, who hath sworn in obedience to legislative injunction, an oath, with which no human power can dispense, that he will do equal right to all manner of people, ought not to make decrees by which Virginia creditors may recover money due to them from the people of Great-Britain ;—
And therefore the court, uport the principles before stated, being of opinion that the payments into the loan office, made by the plaintiffs testator, did not discharge his debts to his british creditors, directed the plaintiff in distributing the assets of his testator, not to distinguish british creditors, on account of their nation, from other creditors.

 A judge should not be susceptible of national antipathy, more than of malice towards individuals—whilst executing his office, he should be not more affected by patriotic considerations, than an insolated subject is affected by the electric fluid in the circumjacent mass, whilst their communication is interrupted, what is just in this ball is just in Westminster hall, and in every other prastorium upon earth. some judges in the westindian islands have been execrated, by citizens of the united american states, for several late sentences against the latter, in favor of british subjects, in certain maritime causes; justly execrated, if fame hath not rnisreported their conduct, none of those citizens, surely, can wish to see the tribunals of their own country so polluted ; for which pollution the men who sit in them would, perhaps, deserve the punishment related by Herodotus to have been inflicted on the corrupt Sisa nones, for the allusion to w'hose story, among the devices on the seal of the Virginia high court of chancery, the present judge of that court acknowledgeth his obligation to the ingenius B. WEST. If one ask why ⅛ this premised? let him be informed that when, some months before this opinion was delivered, a similar case was argued in another court, a stranger, who heard the rhetoric copiously-poured forth, on that occasion, in order to prove, that an american citizen might honestly as well as profitably withold money which he owed to a british subject, and who observed what conviction, caresses, addresses, admiration, adulation, adoration, followed, such a,man might have suspected that one of the cardinal virtues, as they are called, either is not cultivated in America, or is not understood to be the same there as it is in all other civilized countries, to such a stranger this proemium would not appear improper.

 If this seem contrary to what is called authority, as perhaps it may seem to some men, the publisher of the opinion will be against the authority, when, in a question depending, like the present, on the law of nature, the authority is against reason, which is affirmed to be the ease here, in truth, acquirement by conquest is a relic of barbarism, capture and detention of an enemys goods is just only where members of one community, injured by those of another, had not been able to obtain reparation otherwise than by reprisal, and there the reparation ought to be commensurate to the injury, to accede that measure would be more rigorous in this than in ordinary instances; because they who are forced to make the reparation seldom or never happen to be those who had been perpetrators of the injury, peiracy is now generally denominated hostility to mankind, although it was esteemed, as Thucydides ralates, by those whom he calleth antients, both of greeks and barbarians, not approbrions but, honourable, and is so esteemed at this day no doubt by some people on the african coast of the mediteranian sea, but is priva-teering, which many of the present enlightened age seem to think justifiable, any thing but piracy licensed imperial/, and can such a license consecrate it? a commission authorizing reprisals would seem like a license for robbing Peter to pay Paul, if the members of a whole community, when, without their knowledge, some of their fellow-citizens or fellow-subjects act unjustly, be not involved in the guilt, a commission for privateering seems a license to rob Peter for enriching Paul.

 The whole of what is stated in this and the next following paragraph is believed to be incomestible.

 This ⅛ submitted to censure.

 The position in the sixth article of our bill of rights, namely, that men are not bound by laws to which they have not, by themselves, or by representatives of their election, assented, is not true of unwritten or common lav,', that is, of the law of nature, called common law, because it is common to all mankind, the prohibition to kill or wound our fellow men, to defame them, to invade their property, the praecepts to deal faithfully, to make reparation for injury, and others, are perceived intuitively to harmonize with our innate notions of rectitude, so that every man, not under the temptations of revenge, lust or avarice solicited by opportunity, feels the obligation to obey those prohibitions and praecepts, more forcibly than if the duties were capable of demonstration, these laws of nature are, as Antigone says to Creon, in Sophocles, v. 463.
---unwritten laws divine, Immutable, eternal, not like these Of yesterday, but made e’er time began.

Francklin,

They are laws which men, who did not ordain them, have not power to abrogate.
Neither is the position true of instituted laws, if it be literaiy understood, that is, if it be applied to individuals, in the eases of those who were not in being at the institution of the law, nor even in cases of the greater number of those who were in being at that epocha.
Women, infants, and many others, deprived of suffrage, cannot, either by them-» selves or their representatives, be truly said to yield their assent to any law. they would not be permitted, if they should be willing, and even offer, with any ceremony,whatever, to declare their assent; and yet they are bound by the latv. the obligation of the law, therefore, did not derive its force from their consent, if the obligation of a statute, upon some who were confessedly bound by it, derived not its force from their consent explicitly declared, that such an obligation can derive force from their implied or tacit consent is denied.
Again, a man is confessedly bound by a statute, enacted when he was a foetus, or an embryo, or before he was either, but, according to this article of the bill of rights, understood literally, he is not bound by the law because he did not consent to it. ⅞
If obligation of the statute be said to derive its force from assent subsequent, to the institution, and one ask, at what age the assent can be yielded, and by what acts it may be indicated ? to define either satisfactorily, in answering the question, will be difficult, perhaps, impossible.
That laws, of civil institution, derive their obligation from consent of those, who were members of the community, when the laws were instituted, must be admitted, but, if the obligation cease wjth the existence of those individual legislators, which must be the consequence of denying the obligation of the law upon individuals, who did not consent to it, the laws could not be perpetual, as many laws are said to be, nor catholic, as ail laws ought to be. besides, many laws are enacted against the consent of great part of the community.
The vigor of instituted laws, if it survive the original legislators, must be continued, not by consent of succeeding generations, declared individual}', but by some other principle : and that, is natural reason.
■Without society, mankind, if they could exist and propagate, would be wretched; their native rights would be frequently violated; the enjoyment of *215 acquired rights be precarious ; nor could society be preserved without civil institutions and regulations, hence the obligation to observe and conform to those institutions and regulations, by the law of nature, devolves upon men, who could not consent to them.
This doctrine is not derogatory to rational civil liberty, which is to be free from all civil obligation, except such as laws, enacted by consent of the society, or representatives of their election, had created ; and to be free from those obligations, when the same society,.or representatives, shall signify their will to abrogate the laws, which did create the obligations.
But what is the same society? for no nation, at the end of an hour, consists of those individual men of whom it consisted at the begining of that period.
By national identity must be meaned a mystical union of members by successive generations, whereof one imperceptibly renovates the decay of another, a kind of immortality being one of the attributes of a nation, in like manner as (to compare small things with great) in place of soldiers who were removed, by any mean, from the macedoman lochos athanatos, and the roman legio immortalis, others were sur-rogated, so as to perpetuate them.
This identity is familiar to us in ordinary discourse. When the romans are said to have expelled the Tarquins, and to have conquered Perseus, by romans are understood the same nation, although between those two events more than three hundred years had passed.
National identy hath been represented by sensible images;—by a river; the Po-towmac, for example, which is called the same river, although not a drop of the water, which covered its bed, when it was first distinguished by that appellation, had flowed or ebbed in its chattel for many by past ages :—by a tree ; as in the episode of the iliad, Z. containing the dialogue between Diomede and GHaucus ; by a ship, which is called the same ship, when, from decays and reparations, hot one atom of the materials, with which it was launched, remains about it.
But no image, perhaps, can represent national identity so completely as a mans self, in the course of his life, such changes happen both in body and mind, that Pythagoras, at ninety years of age, seemed no more than to be the Pythagoras, of nine days, nine months, or nine years old, than he was Euphorbus, Collides, Her-motimes or Pyrrhus, each of whom he supposed hfmself, by the metempsychosis, successively to have been, and with no less propriety than Pythagoras may be called the same man, notwithstanding the changes which happened to him, may the nation, whose social compact hath not been dissolved, be called thesame nation, for any period of time.
If those, who enacted the laws, and those, who, several ages afterwards, abolished them, can be called the same nation, the laws may be truly said to begin and end by the same authority, and men considered, not as individuals but, *216 as a nation may be truly said not to be bound by any laws, of civil institution’ except those to which they, that is the nation, had given their consent, in this sense, the position before said to be in our bill of rights is admitted to be true; and in the like sense only this proposition of chief justice Hobart, in the 256 page of his report, namely, an act of parliament hath every mans consent as well TO COME as present, can be free from anachronism.
Upon these principles, men are bound by the statutes of the country, whereof they are members, although, considered as individuals, they did not, by themselves, or representatives of their election, consent to the statutes.
Aliens are bound by the laws of the country in which they reside in consideration of the protection enjoyed by the government.
But that laws of civil institution cannot bind the persons of men, who are not members of the society, nor resident within its territory, is believed to be an irre-fragable truth.

 These payments, if they must be called payments, into the loan office, were made, when the paper money had so depredated that, according to the statutory scale, 70 pounds, in some instances, and 1000 pounds, in other instances, were worth no more than one pound.

 üpon this point the argument urged on behalf of american debitors may be exhibited in this form : the british king, by his garrisons, retaipeth certain posts within the territorial limits of the united american states dominion, and also hath not restored or paid the value of slaves which his troops plundered from some of our fellow-citizens, in which articles he hath been a league-breaker, the two nations, by these breaches, are in a state of war; every article in the treaty of peace being a condition, so that by non performance of any one the whole act is annulled, in that state of war every man woman and child of each nation is an enemy of every man woman and child of the other nation, property taken from an enemy is lawfull prize—becomes by seizure the property of the captor, americana, paying the money due to british subjects, may take it from them, being enemies, if reprisal of money paid would deprive the creditor of his right, detention of the money unpaid ought to extinguish the creditors right; and the rather, because this saves to the debitor the trouble and danger of a conflict to recover the money paid, and to the creditor the mortification of a tantalism.

 The question here discussed is depending, perhaps at this time, before the circuit court, what they may determine the judge of this court will not take the liberty to conjecture if a solitary judge of a subordinate court in one state, should circumscribe the jurisdiction of the supreme american tribunal, he would seem to act as irrationaly, as it one with a radius, equal to the semidiameter of the orbit of a satelles, should attempt to describe the orbit of its primary planet.